1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

ALASKA CARPENTERS HEALTH
AND WELFARE TRUST FUND, et al.,

CASE NO. C23-1320 MJP

11

Plaintiffs,

ORDER GRANTING MOTION FOR
DEFAULT JUDGMENT

12

13

v.

14

GREYROCK DRILLING &
PILEDRIVING LLC, et al.,

15

Defendants.

16

17

18

This matter comes before the Court on Plaintiffs' Motion for Default Judgment. (Dkt. No.

19

15.) Having reviewed the Motion and all supporting materials, the Court GRANTS the Motion

20

and ENTERS Default Judgment on the terms set out in this Order.

21

**BACKGROUND**

22

Plaintiffs Alaska Carpenters Health and Welfare Trust Fund (the "Health Trust"),

23

Southern Alaska Carpenters Retirement Fund (the "Retirement Trust"), Alaska Carpenters

24

Defined Contribution Trust Fund (the "Defined Contribution Trust"), and Alaska Carpenters

1   Training Trust (the "Training Trust") (collectively the "Trust Funds") have filed suit against

2   Defendants Greylock Drilling & Piledriving LLC and its sole governor and decision-maker,

3   David Sjogren. (Complaint ¶¶ 1.1-1.7 (Dkt. No. 1).) The Trust Funds filed suit to enforce

4   Greyrock's obligation to timely provide monthly remittance reports to the Trust Funds and to

5   remit fringe benefit contributions. (Id. at ¶¶ 3.11-3.17.) The Trust Funds allege Defendants failed

6   to provide timely remittance reports and refused to pay fringe benefits. (Id.) The Trust Funds

7   seek delinquent fringe benefits, liquidated damages, prejudgment interest, attorneys' fees and

8   costs, as allowed under ERISA. (Id.) And the Trust Funds seek to impose upon Greyrock's

9   owner, David Sjogren, joint-and-several liability with Greyrock for amounts withheld from

10  employee wages for the defined contribution pension contributions and union dues. (Id. ¶¶ 4.7-

11  4.16.)

12        Greyrock's obligations to the Trust Funds arise out a May 2019 Region-Wide

13  Compliance Agreement that Sjogren signed on behalf of the company, which binds it to a

14  number of collective bargaining agreements/master labor agreements. (Compl. ¶ 3.1.) By signing

15  the Compliance Agreement, Greyrock agreed to make fringe benefit contributions to the Trust

16  Funds, among others, and also agreed to be bound by the written terms and conditions of their

17  respective trust agreements. (Id. ¶ 3.2.) All of the Trust Funds require submission of remittance

18  reports, fringe benefit contributions, payment of liquidated damages of 20% of all delinquent

19  contributions, prejudgment interest of 12%, and attorneys' fees and costs. (Id. ¶¶ 3.5-3.9.)

20  Remittance reports and benefits are due the 15th of every month. (Id. ¶ 3.10.)

21        The Trust Funds allege that Greylock used employees to perform covered work in Alaska

22  and Defendants failed to provide timely remittance reports or fringe benefit contributions.

23  (Compl. ¶ 3.11-3.14.) With their Motion for Default Judgment, the Trust Funds provide a

24

1    declaration from the Trust Funds' plan administrator, who avers that Defendants failed to

2    provide any fringe benefit contributions or timely remittance reports for September 2022 through

3    May 2023. (Declaration of Holly Garcia ¶¶ 2-3, 11-20.) The plan administrator specifies that

4    Defendants owe: (1) $200,065.50[1] in fringe benefit contributions for the period September 1,

5    2022 through May 31, 2023; (2) $37,207.07 in liquidated damages; and (3) $16,475.99 in

6    accrued, prejudgment interest calculated through the November 22, 2023. (Id. ¶¶ 11-22.) This

7    totals $253,748.56. (Id.) Additionally, counsel for the Trust Funds has submitted billing records

8    showing $13,444.00 in attorneys' fees and $750 in costs incurred in litigating this action.

9    (Declaration of Jeffrey Maxwell ¶ 10.) Counsel has billed $310/hour and claims to have spent 57

10    hours working on this matter. (Id. ¶¶ 9-10.)

11                                       **ANALYSIS**

12         A court's decision to enter a default judgment is discretionary. Aldabe v. Aldabe, 616

13    F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts

14    prefer to decide "cases on their merits whenever reasonably possible." Eitel v. McCool, 782 F.2d

15    1470, 1472 (9th Cir. 1986). When considering whether to exercise discretion in entering default

16    judgments, courts may consider a variety of factors, including:

17           (1) the possibility of prejudice to the plaintiff, (2) the merits of a plaintiff's substantive
       claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action;
18           (5) the possibility of a dispute concerning material facts; (6) whether the default was due
       to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil
19           Procedure.

20

21

22    _____

23    [1] The Court notes that Garcia's Declaration incorrectly states that the fringe contributions due for
       April 2023 were $15,545.90. (Garcia Decl. ¶ 19.) As the supporting materials show, the correct
       amount for that month is $15,565.90. (Dkt. No. 16 at 236.) This twenty-dollar difference is
24    correctly reflected in the total presented by Garcia and the supporting records.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 3

1   Id. at 1471-72. Courts reviewing motions for default judgment must accept the allegations in the

2   complaint as true, except facts related to the amount of damages. Geddes v. United Fin. Grp.,

3   559 F.2d 557, 560 (9th Cir. 1977).

4       As an initial matter, the Court finds that it has jurisdiction over this action pursuant to 29

5   U.S.C. § 1132(e)(1) and 28 U.S.C. § 1367. The Court also finds that venue is proper under 29

6   U.S.C. § 1132(e)(2) and pursuant to agreements between the parties.

7       The Court finds that the Eitel factors weigh in favor of entry of default judgment. First,

8   without an order compelling an audit, the Trust Funds and their ultimate beneficiaries may be

9   denied fringe benefits to which they are due. Second, the Trust Funds have presented cogent

10   allegations, which the Court accepts as true, and declarations averring that Defendants have

11   failed to provide timely remittance reports or make any contributions that should have been made

12   under the Compliance Agreement and collective bargaining agreements. Third, the Complaint is

13   adequately drafted and sets for the basis for relief. Fourth, the amount of money at stake is

14   substantial—well over $200,000. Fifth, the current allegations do not appear to be subject to a

15   dispute of fact—that Defendants have not provided the required contributions or timely

16   remittance reports. Sixth, there does not appear to be any basis to find excusable neglect given

17   Defendants' decision not to participate in this action to date despite being properly served.

18   Seventh, while the Federal Rules favor a decision on the merits, the Court finds that absent a

19   default judgment the Trust Funds will be stymied in their efforts to vindicate their rights and

20   protect the rights of the covered workers to obtain any fringe benefits. On balance, the Court

21   finds that the Eitel factors weigh in favor of entry of default judgment.

22       As to the substance of the requested default judgment, the Court finds the Trust Fund's

23   request is proper and supported. Based on the allegations in the Complaint and the declaration

24

from the plan administrator, Defendants have failed to make contributions from September 2022

through May 2023. (Garcia Decl. ¶¶ 11-22.) Accordingly, the Court finds that Defendants owe

the Trust Funds $253,748.56, which is the sum of: (1) $200,065.50 in fringe benefit

contributions for the period September 1, 2022 through May 31, 2023; (2) $37,207.07 in

liquidated damages; and (3) $16,475.99 in accrued, prejudgment interest calculated through the

November 22, 2023. (Id.)

The Court also finds that the Trust Funds are entitled to attorneys' fees and costs

incurred. The Court assesses this request under the relevant criteria outlined in Kerr v. Screen

Extras Guild, Inc., 526 F.2d 67, 70, abrogated on other grounds by City of Burlington v. Dague,

505 U.S. 557 (1992):

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Id. Plaintiffs have supported each of these factors in a declaration from counsel. (Maxwell Decl.

¶¶ 1-10.) The Court finds this evidence persuasive that the hours expended, the costs incurred,

and the hourly rates requested are reasonable. Given the records provided, the Court awards the

Trust Funds $13,444.00 in attorneys' fees and $750.0 in costs. (See id.)

## CONCLUSION

The Court agrees with the Trust Funds that they are entitled to entry of Default Judgment

on the terms set forth in the briefing. The Trust Funds have provided adequate and detailed

records supporting the requested damages, prejudgment interest, attorneys' fees, and costs. The

Court therefore GRANTS the Motion for Default Judgement and ORDERS entry of judgment as

follows: (1) $200,065.50 in fringe benefit contributions for the period September 1, 2022 through May 31, 2023; (2) $37,207.07 in liquidated damages; (3) $16,475.99 in accrued, prejudgment interest calculated through the November 22, 2023; (4) $13,444.00 in attorneys' fees; and (5) in $750.00 costs.

The clerk is ordered to provide copies of this order to all counsel.

Dated December 12, 2023.

Marsha J. Pechman
United States Senior District Judge